THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JUDD LEWIS JAMES, Defendant-Appellant.

Second District No. 2—01—0699

Opinion filed March 14, 2003.

Daniel J. Kramer, of Law Offices of Daniel J. Kramer, of Yorkville, for appellant.

Timothy J. McCann, State's Attorney, of Yorkville (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Robert E. Davison, of Springfield, for the People.

JUSTICE GROMETER delivered the opinion of the court:

Defendant, Judd Lewis James, was found guilty of one count of unlawful use of a weapon (720 ILCS 5/24—1(a)(4) (West 1998)) following a bench trial in the circuit court of Kendall County. This charge was based on defendant's transport of a pistol in the passenger compartment of his car. Defendant now appeals, raising three allegations of error. Defendant first contends that the State failed to make the required showing that the handgun was "immediately accessible" to him. See 720 ILCS 5/24—2(b)(4) (West 1998). Next, defendant argues that the gun and several statements he made during his encounter with the police should have been suppressed due to violations of his fourth and fifth amendment rights. U.S. Const., amends. IV, V. Defendant finally asserts that he was prejudiced when the trial court allowed the State to amend the complaint shortly before the State rested its case. For the reasons that follow, we affirm.

■ Before proceeding further, we note that the record contains neither a report of proceedings nor a bystander's report (see 166 Ill. 2d R. 323(c)). It does, however, contain a videotape of the stop and arrest of defendant. It is well settled that it is the responsibility of the appellant to preserve and present a sufficient record to facilitate review. *People v. Stewart*, 179 Ill. 2d 556, 565 (1997). When the record presented on review is incomplete, a reviewing court must construe any omission in favor of the judgment rendered by the court below. *People v. Majer*, 131 Ill. App. 3d 80, 84 (1985). The omissions in the record in the instant case prevent us from considering two of defendant's contentions of error.

Regarding his first point, the trial court found that the rear seat of defendant's car was folded down over the gun, but not so far as to prevent the gun from being immediately accessible. The videotape of defendant's arrest does not provide us with a view of the seat. Accordingly, we have no basis upon which to review the trial court's finding. In his reply brief, defendant points out that he has attempted to provide this court with a record by utilizing certain substitute reports. However, defendant also acknowledges that these reports were not certified by the trial court. Supreme Court Rule 323(c) provides that a bystander's report must be certified and that "[a]bsent stipulation,

only the report of proceedings so certified shall be included in the record on appeal." 166 Ill. 2d R. 323(c). Accordingly, we are limited to the videotape. Because the trial court's finding does not conflict with the videotape, we have no basis for concluding that it was erroneous.

We are also unable to consider defendant's claim that he was prejudiced by the State's eleventh-hour amendment of the complaint. The decision regarding whether to allow an amendment to a charging instrument lies within the discretion of the trial court and will not be disturbed absent an abuse of that discretion. *People v. Alston*, 302 Ill. App. 3d 207, 211 (1999). Without a transcript of the trial or a bystander's report, we do not know the trial court's reason for allowing the amendment. Accordingly, it is impossible for us to say whether the trial court abused its discretion. See *In re Marriage of Blinderman*, 283 Ill. App. 3d 26, 34 (1996) ("Absent a transcript of the hearing on the distribution of the assets, there is no basis upon which to determine whether the circuit court abused its discretion in denying defendant's motion").

We are, however, able to review defendant's contention regarding the propriety of his detention and arrest. The videotape provides us with a firsthand view of this episode and reveals the following events. At approximately 2 a.m. on October 17, 1999, defendant was a passenger in his own vehicle. The vehicle was driven by Sandra Payan. Officer William Blessing, of the Oswego police department, observed the car traveling at a speed of 50 miles per hour in a 35-mile-per-hour zone. The car was also swerving. Blessing initiated a traffic stop, and the car pulled over to the side of the road. Blessing approached the car and requested identification from both Payan and defendant. Both produced their driver's licenses.

Blessing requested that Payan exit the car and she complied. Blessing then had her perform four field-sobriety tests. After completing the tests, Blessing concluded that Payan was intoxicated and placed her under arrest for driving under the influence of alcohol (625 ILCS 5/11—501 (West 2000)). Blessing then called for backup because he was uncertain how defendant would react when told that Payan had been arrested.

Two other officers arrived. They, along with Blessing, approached the car. Blessing partially entered the vehicle from the driver's side. One officer stood behind Blessing and the other stood next to the passenger side door. Blessing asked whether defendant had $100 to post bail for Payan. Defendant stated that he did; however, he could not initially locate his wallet. Blessing asked defendant to step out of the car, and defendant did so. Blessing then returned defendant's driver's license to him. The tape shows that, although three officers stood near

defendant, he was free to move about. At one point, he walked to the driver's side door and retrieved a jacket.

Blessing informed defendant that the car would have to be towed because defendant was too intoxicated to drive and it could not be left on the side of the road. Defendant stated that he had a friend who lived nearby and that he would walk to his friend's house and get his friend to drive the car. Blessing stated that defendant could either call a cab or accept a ride to the police station so that he could post bond for Payan.

At one point, Blessing announced his intention to search the car, although he was under the misapprehension that the arrest of Payan entitled him to search only the area of the car where she was sitting. See *People v. Gonzalez*, 316 Ill. App. 3d 354, 362 (2000). Blessing requested permission to search defendant and asked whether defendant had any drugs or weapons. Defendant, apparently referring to his person, answered negatively. He then clarified that there was an unloaded pistol on the backseat of the car. When Blessing inspected the weapon, however, he found that it was loaded. Defendant was arrested.

■ Initially, we reject defendant's contention that the statements he made during this encounter should be suppressed due to a *Miranda* violation. See *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966). It is well established that roadside questioning during the course of a traffic stop is not a custodial interrogation for the purpose of *Miranda*. See *Berkemer v. McCarty*, 468 U.S. 420, 438-39, 82 L. Ed. 2d 317, 334, 104 S. Ct. 3138, 3149-50 (1984); *People v. Laspisa*, 243 Ill. App. 3d 777, 783 (1993). Accordingly, this argument is meritless.

■ Defendant's contention that the gun was recovered as the result of an illegal seizure is, on the other hand, more substantial. Defendant argues that Blessing exceeded the bounds of a proper *Terry* stop (*Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)) by questioning him about drugs and guns absent reasonable suspicion that such items were present. Defendant correctly points out that the scope and duration of a *Terry* stop are strictly limited to the underlying justification for the stop. For example, in *People v. White*, 331 Ill. App. 3d 22, 34 (2002), we recently held that "[q]uestioning wholly unrelated to the purposes of the stop, which is reasonably calculated to elicit incriminating responses, is impermissible unless supported by independent, reasonable, and articulable suspicion." However, we also made the following observation: "Nothing in this decision prohibits an officer from questioning a person on any subject during an ordinary consensual police-citizen encounter that does not rise to the level of a

stop or seizure." *White*, 331 Ill. App. 3d at 34. In the case at bar, we conclude that the encounter between defendant and Blessing was consensual; hence, Blessing did not need reasonable suspicion as to the presence of guns or drugs in order to inquire about them.

Undeniably, the initial stop of the vehicle constituted a seizure of both Payan and defendant. In *People v. Kunath*, 99 Ill. App. 3d 201, 205 (1981), this court recognized that "it is clear that stopping an automobile and detaining its occupants constitutes a 'seizure' of those persons." The United States Supreme Court has also observed that "stopping an automobile and detaining its occupants constitute a 'seizure.'" *Delaware v. Prouse*, 440 U.S. 648, 653, 59 L. Ed. 2d 660, 667, 99 S. Ct. 1391, 1396 (1979). Further, a traffic stop is a seizure in the nature of a *Terry* stop. *People v. Luna*, 322 Ill. App. 3d 855, 859 (2001). Thus, defendant was seized when Blessing stopped the car, and the seizure was essentially a *Terry* stop.

The justification for the stop terminated when Blessing arrested Payan. See *People v. Robinson*, 322 Ill. App. 3d 169, 175-76 (2001) (holding that "when the officer concluded the traffic stop and did not issue any citations but merely issued warnings, the stop should have ended and the further detention of the driver and the passengers became unlawful and invalidated any subsequent consent to the searches"). Quite properly, Blessing communicated to defendant, through his words and actions, that the stop had terminated. Blessing approached the car and spoke with defendant about bond money for Payan. Blessing's tone was that of normal conversation. After speaking for a short time, Blessing asked defendant to exit the car. Shortly thereafter, Blessing returned defendant's driver's license to him. At another point, prior to the questioning of which defendant complains, Blessing told defendant that defendant could either come to the police station and wait for Payan or call a cab. Blessing would not let defendant leave with the car, walk to his friend's house, or wait on the roadside because defendant was intoxicated. Further, although there were three officers present, defendant was allowed to freely move about. At one point, he retrieved his jacket from the car and no officer attempted to interfere or restrain him.

These facts all indicate that the traffic stop was over. In determining whether defendant was seized during the period following Payan's arrest, we consider whether, in light of the totality of the circumstances, a reasonable person would have believed he was free to leave. *People v. Brownlee*, 186 Ill. 2d 501, 519 (1999). A reasonable person, having had his license returned and having been told he could call a taxi, surely would feel free to leave. We attach no significance to the fact that Blessing refused to let defendant drive, walk, or remain on

the roadside due to defendant's intoxication and, presumably, safety concerns. Defendant was informed of ways in which he could have terminated the encounter. Thus, he knew he could leave.

Therefore, the encounter between defendant and Blessing was consensual. When Blessing asked defendant whether he had any drugs or guns, defendant could have refused to answer and accepted Blessing's offer of a ride to the station or he could have called a cab. It is well settled that a police officer may question an individual on any subject during a consensual encounter. *Florida v. Royer*, 460 U.S. 491, 497, 75 L. Ed. 2d 229, 236, 103 S. Ct. 1319, 1324 (1983) ("[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions"); *Brownlee*, 186 Ill. 2d at 515; *White*, 331 Ill. App. 3d at 34. Blessing invaded no right of defendant by asking him about guns and drugs.

Accordingly, the circuit court of Kendall County properly denied defendant's motion to suppress. We therefore affirm its decision.

Affirmed.

O'MALLEY and BYRNE, JJ., concur.