No. 2-19-0084
Order filed November 6, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CM-2623 |
| THOMAS E. RUZECKI, | ) ) | Honorable Kathryn D. Karayannis, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court did not commit procedural or evidentiary errors requiring reversal. The State produced sufficient evidence to find defendant guilty of domestic battery. The section of the statute under which defendant was charged and convicted is not unconstitutionally vague or overbroad as applied to him.

¶ 2   Following a jury trial, defendant, Thomas E. Ruzecki, was found not guilty of a first count of domestic battery (bodily harm) (720 ILCS 5/12-3.2(a)(1) (West 2018), but guilty of a second count of domestic battery (insulting or provoking contact) (720 ILCS 5/12-3.2(a)(2) (West 2018). In this direct appeal of his conviction, defendant raises three issues. The first is whether the trial court committed several procedural and evidentiary errors which require a reversal of his

conviction. The second is whether the State failed to prove defendant guilty beyond a reasonable doubt. The third is whether the section 12-3.2(a)(2) (insulting or provoking contact) of the Criminal Code of 2012 (Criminal Code) is unconstitutional as applied to him. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     The following factual recitation is compiled from the testimony and evidence presented at trial. On September 14, 2017, defendant and his then live-in girlfriend, Heidi Dorsey (Dorsey), were having dinner at their home in Carpentersville. During dinner they began arguing, and the argument became physical. Sometime thereafter, defendant left their home to go to his sister's house. "Freaked out" and "upset" at the "huge fight," Dorsey sent a text message to her adult daughter, Kaitlyn, before going to bed. Kaitlyn responded to Dorsey's text but did not receive any further communication from Dorsey, despite sending her texts and calling her. Kaitlyn then called the police and went to check on Dorsey.

¶ 5     When the police arrived at defendant and Dorsey's home, Dorsey ignored their knocking at the door for some time because she felt like she "was a part of the situation too." However, she eventually let the police in, and her daughter arrived a few minutes later. Dorsey was initially unwilling to speak with the officers because she was nervous. However, she indicated that defendant had hit her in the face and that "other stuff" had happened. She also allowed an officer to take a photo of her face, to document a swollen eye and a laceration on her lip. The officers then located defendant at his sister's house, and he was arrested for domestic battery.

¶ 6     The next day, Dorsey filed a verified petition for an order of protection, averring that she and defendant were arguing when defendant threw water in her face and pushed her, which caused bruises on her arms and buttocks. She also averred that defendant punched her in the face, which

broke her glasses and bruised her face. Finally, she averred that defendant stated that he wanted to "smash her head in." The emergency order lapsed on October 6, 2017.

¶ 7        A pre-trial conference was held on March 1, 2018, with both defense counsel and the State answering ready. The trial court noted that the only pre-trial matter in the file was the State's motion to amend the complaint, filed in December 2017. The initial charges on the complaint read:

"Count 01: *** on or about 09/14/17, [defendant] committed the offense of domestic battery which causes bodily harm *** in that defendant knowingly caused bodily harm to Heidi Dorsey, a household member and girlfriend of the defendant, in that said defendant, punched Heidi on the eye with a closed fist, causing swelling, bruising and an abrasion.

***

"Count 02: *** on or about 09/14/17, [defendant] committed the offense of domestic battery – make physical contact *** in that defendant, knowingly made physical contact of an insulting and provokin [*sic*] nature with Heidi Dorsey, a household member and girlfriend of said defendant, in that said defendant punched Heidi on the eye with a closed fist, causing bruising, swelling and an abrasion."

The State sought to amend the charges to read:

Count I: "On or about September 14, 2017, *** [defendant] knowingly without legal justification made physical contact causing bodily harm to Heidi Dorsey, a family or household member of the defendant, in that the defendant struck Heidi Dorsey on or about the head and/or body"

And Count II:

"On or about September 14, 2017, *** [defendant] knowingly without legal justification made physical contact of an insulting or provoking nature with Heidi Dorey, a family or household member of the defendant, in that the defendant struck Heisi Dorsey on or about the head and/or body ***."

Defense counsel objected to the motion, arguing that the amended language substantively changed the charges, making them more generic and easier to prove. The court granted the motion over counsel's objection.

¶ 8      The trial court then addressed defendant's motion in *limine*, which was filed that morning, in which he requested that the defense be able to present evidence of other acts of domestic violence between defendant and Dorsey. Because defense counsel filed the motion that day, the matter was continued to allow the State time to respond.

¶ 9      Trial was scheduled to begin on March 6, 2017. However, Dorsey failed to appear, and the State asked for leave to file a petition for adjudication of indirect criminal contempt and made an oral motion to continue the trial. Defense counsel objected, arguing that the State did not comply with section 114-4 of the Code of Criminal Procedure of 1963 (Code), which requires such motions to be in writing, and that the State did not demonstrate good cause for the trial to be continued. The trial court granted the State's motion, continuing the case until May 2018, and required the State to provide a written motion on the matter before noon that day. The record provides that the State filed a written motion and affidavit.

¶ 10      On May 3, 2018, at the second pretrial conference, the trial court denied defendant's motion in *limine* to admit other acts of domestic violence between defendant and Dorsey "for the reasons stated on the record." There is no transcript of the pretrial conference in the record before us.

¶ 11    Trial began on May 8, 2018. Before trial began, defense counsel presented a second motion in *limine* to bar the State and its witnesses from referencing (1) any previous domestic violence incidents between Dorsey and defendant and (2) the content of the text message Dorsey sent to Kaitlyn. The State did not contest the motion but did note that the context of the text message appeared in the petition for order of protection, which the State planned to introduce into evidence. The State noted that it had "spoken with [defense counsel] about that. We do have an agreement as to what portions will be redacted to insure [*sic*] that we do follow the law." The court granted the motion, stating, in relevant part, "[t]here has never been an order allowing [the State] to bring in evidence of prior acts of domestic violence and so no one should be testifying about alleged prior acts of domestic violence." The trial began thereafter.

¶ 12    The State called Dorsey as its first witness. She testified generally as to the above facts. Relevant to this appeal, the State also introduced the redacted petition for order of protection and a series of photographs into evidence through Dorsey's testimony. The photographs showed bruises on Dorsey's right arm and buttocks, which she attested that she took a few days after the September 14 incident.

¶ 13    The State also called Kaitlyn, who testified as to receiving a text message from Dorsey and calling the police. Finally, the State called the responding officer, Matthew Lipke, to testify. Lipke generally testified to the above facts as well. The photograph of Dorsey's face was introduced through his testimony. During cross-examination, after discussing the injuries to Dorsey's face, the following exchange occurred:

"Q. Did she indicate to you that any parts of her body were injured?

A.  No – well, she was – I'm sorry. No.

Q. Did she indicate that she had any bruises on her arms or that her arms were injured in any way?

A. She was referring to past incidents with different things.

MS. SEAMANN [DEFENSE COUNSEL]: Your Honor, we ask that the answer be stricken.

THE COURT: You asked the question. That request is denied.

\*\*\*

Q. On September 14, 2017, did Ms. Dorsey indicate to you that she had any injuries to her arms?

A. I can't answer that question with the way that you are – or, I can't answer the question the way you are asking it. She did reference other things but not from that night.

Q. On that night, did she indicate to you that she had any injuries to her arms from incidents that occurred on September 14th?

A. That occurred from that night, no, she did not."

Outside of the jury's presence, the State requested that it be allowed to ask certain questions to Lipke on redirect to clarify the above testimony, in light of the trial court's order to not introduce other acts of domestic violence between Dorsey and defendant. Over defense counsel's objection, the court allowed the State to ask two questions: (1) whether Dorsey told Lipke about an injury to any other part of her body than her face or lip and (2) if yes, what part of her body did she indicate was injured. The court denied the State's request to ask who caused the injury to her finger.

¶ 14    On redirect examination, the State elicited testimony for the two questions immediately. The State then proceeded to ask questions about Dorsey's demeanor through the investigation, and why, despite Dorsey's evasiveness, Lipke continued to investigate. The State also asked Lipke

about the injuries he observed on Dorsey's face. The State then asked if Dorsey had told Lipke who had hit her in the eye, and defense counsel objected. The trial court overruled the objection and Lipke answered that Dorsey indicated that defendant had struck her in the face.

¶ 15    The State then rested. Defense counsel moved for a directed finding, which the trial court denied. The defense recalled Lipke, who testified that defendant had fresh scratch marks on his neck and a red mark on his torso when he was arrested. Photographs of defendant's neck and torso depicting the injuries were admitted into evidence. Defendant did not testify.

¶ 16    After closing arguments, the jury deliberated and found defendant not guilty of the first count of domestic battery (bodily harm), and guilty of the second count of domestic battery (insulting or provoking contact). On June 8, 2018, 31 days after the verdict, defendant filed a motion for a new trial or to reconsider and vacate the finding of guilty. The trial court denied defendant's motion on December 28, 2018, "for the reasons stated on the record," which was not included in the record before us. The court sentenced defendant to 14 days in jail and one year of conditional discharge. Defendant filed his notice of appeal on January 28, 2019.

¶ 17                                    II. ANALYSIS

¶ 18    Defendant's first contention is that the trial court made seven serious procedural and evidentiary errors throughout the pendency of the case that require reversal: (1) granting the State's motion to amend the complaint during the initial pretrial conference; (2) granting the State's motion to continue the trial; (3) admitting photographs of Dorsey's bruised arm and buttocks into evidence; (4) admitting the petition for order of protection into evidence; (5) allowing the State to ask certain questions of Lipke in contravention of its earlier order; (6) denying defendant's request to introduce statements he made at the time of his arrest into evidence; and (7) denying defendant's first motion in *limine* to admit prior acts of domestic

violence between defendant and Dorsey. Defendant argues that each of the errors impacted his right to a fair trial and the only appropriate redress would be to reverse his conviction.

¶ 19　　In response, the State first avers that defendant's arguments with respect to all the errors have been waived because his posttrial motion for a new trial was untimely filed 31 days after the guilty verdict. The State recognizes that it proceeded in arguing against the untimely posttrial motion, but we should honor the procedural default, given the untimely posttrial motion paired with the inadequate record on appeal. The State also argues that none of the enumerated actions of the trial court were error, but if any of the enumerated actions were in fact error, they were harmless. Waiver aside, we agree with the State that the enumerated alleged errors were not errors.

¶ 20　　"In instances where individual errors committed by a trial court do not merit reversal alone, the cumulative effect of the errors can deprive a defendant of a fair trial." *People v. Fultz*, 2012 IL App (2d) 101101, ¶ 54. Where that is the case, due process and fundamental fairness require that a defendant's conviction be reversed and remanded for a new trial. *Id.* However, a cumulative-error argument necessarily fails where none of the separate claims amount to a reversible error and where no plain errors occur. *People v. Jones*, 269 Ill. App. 3d 797, 807 (1994). We address each of defendant's claims of error in turn.

¶ 21　　Defendant first argues that the trial court erred in amending the complaint during the March 2017 pretrial conference. Defendant asserts that the amendment was a substantive, material change that surprised him and thus created prejudice against him. A charging instrument may be amended at any time, even on the day of trial, to correct a formal defect. 725 ILCS 5/111-5 (West 2018); *People v. Alston*, 302 Ill. App. 3d 207, 210 (1999). Amendments are proper and permissible so long as the change is not material and does not alter the nature or

elements of the offense originally charged. *People v. Gray*, 396 Ill. App. 3d 216, 223 (2009).

This is especially true where the defendant is not surprised or prejudiced by the change. *Id.* The

decision to allow an amendment to a charging instrument lies within the discretion of the trial

court and will not be disturbed absent an abuse of that discretion. *People v. James*, 337 Ill. App.

3d 532, 534 (2003).

¶ 22    Defendant cites *People v. Betts*, 78 Ill. App. 3d 200 (1979), for support that the

amendment in the instant case was substantive, because the amended language in the complaint

made the offense easier to prove. In *Betts*, the indictment was amended from the delivery of a

narcotic to the delivery of "not" a narcotic and similarly changed the statute referencing the

offense. 78 Ill. App. 3d at 201-02. The court held that because the amendment in the indictment

changed the offense charged, and the grand jury did not intend to charge the defendant with the

amended charge, the change was substantive. *Id.* at 203. Such is not the case here. Defendant

was charged with two counts of domestic battery, for bodily harm and insulting or provoking

contact (725 ILCS 5/12-3.2(a)(1); *id.* § 5/12-3.2(a)(2)). The amendment the State sought did not

change any of the elements of the charges, but rather the manner in which they were committed.

See *People v. Ross*, 395 Ill. App. 3d 660, 670 (2009) (holding amendments to an indictment that

change the manner in which the defendant committed the offense are formal, not substantive).

Because such a change is formal, the court did not err in granting the State's motion to amend

the complaint.

¶ 23    Furthermore, we reject defendant's argument that he was surprised and prejducied by the

amendment due to how close to trial the amendment was granted. Amending formal defects in a

charging document "is warranted especially where there is *no resulting surprise* or prejudice to

the defendant or where the record clearly shows that he was otherwise *aware of the charge*

*against him.*" *Ross*, 395 Ill. App. 3d at 667. (Emphasis added.) The State's motion to amend the complaint was filed in December 2017 and granted in March 2018. The jury trial took place in May 2018. Thus, the record demonstrates that defendant was aware of the charges the State intended to bring against him *five* months before trial, making him aware of the charges he faced and contradicting his argument that he was surprised by the amended charges.

¶ 24     We also note, peripherally, that in *Betts*, the court highlighted that part of the prejudicial nature of the amendment was due to the type of charging instrument. 78 Ill. App. 3d at 204 ("Had the State chosen another means of commencing prosecution, a means which lacked the independent review by a grand jury of the decision to prosecute [such as a complaint], the amendment of the charge against Betts might not have been so prejudicial."). Therefore, the court did not abuse its discretion in allowing the State to amend the complaint.

¶ 25     Second, defendant argues that the trial court erred by granting the State's motion to continue the trial when Dorsey failed to appear on the initial March trial date, because the State did not act diligently in presenting a written motion requesting the continuance and Dorsey's testimony would be cumulative of the State's other witnesses. Again, we disagree.

¶ 26     Section 114-4 of the Code allows the State to move for a continuance when a material witness is unavailable, and the prosecution will be prejudiced by the absence of her testimony, or when the court finds that the interests of justice so require. 725 ILCS 5/114-4(c)(2); (d) (West 2018). When, as here, the motion to continue is made more than 30 days after arraignment, it shall be written and supported by an affidavit. *Id.* § 114-4(a). Granting a motion to continue is within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. *People v. Dotson*, 263 Ill. App 3d 571, 77 (1994). When exercising this discretion, the court must determine whether the movant has acted diligently in obtaining the witnesses,

whether the evidence would be material to the case, and whether, without the evidence, the trial would be fair. *Id.* at 577-78.

¶ 27    Defendant's argument that the State failed to act diligently in presenting him and the court with a written motion for continuance is misguided because the State could not have filed a written motion before Dorsey did not appear. Defendant's argument is seemingly that, to ensure he had a fair trial, the State should have predicted that Dorsey would not have appeared for court, despite apparently being served with notice to appear, and should have drafted the required motion and affidavit before the trial date. We will not impute the onus of omniscience onto the State. The court granted the State's oral motion on the condition that it file a written motion and affidavit, pursuant to the Code, by noon that day. The record before us shows that a written motion was filed accordingly.

¶ 28    We also disagree with defendant's argument that Dorsey's testimony would be cumulative of the other witnesses. Dorsey was the victim in this case. Only Dorsey was able to testify as to her feelings after the incident with defendant. Only Dorsey had the ability to authenticate the photos of the bruises on her arm and buttocks. Only Dorsey could testify as to the statements within the petition for order of protection. Such testimony is not cumulative, but rather essential, to the State's case. *Contra People v. Jarnagan*, 154 Ill. App. 3d 187, 195 (1987) (holding that the trial court properly denied a motion to continue when a missing witness's testimony was cumulative of other witnesses). We therefore cannot say that the trial court abused its discretion in granting the State's motion for continuance.

¶ 29    Defendant's third and fourth claims of error both deal with the admission of exhibits into evidence, specifically photographs of Dorsey's injuries and the petition for order of protection. Defendant argues that the trial court improperly admitted the photographs of Heidi's bruised arm

and buttocks into evidence because the State failed to lay the proper foundation to do so. The conditions for the admissibility of photographic evidence are its relevance and its accuracy. *People v. Glisson*, 359 Ill. App. 3d 962, 970 (2005). Photos are admissible if they are identified by a witness who has personal knowledge of the subject matter depicted by the photographs, and the witness testifies as to the photograph's fair and accurate representation of the subject matter at the relevant time. *People v. Martinez*, 371 Ill. App. 3d 363, 380 (2007). Whether to admit a photo into evidence lies within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. *People v. Taylor*, 2011 IL 110067, ¶ 27.

¶ 30      In the case at hand, Dorsey testified that she noticed injuries to her arm and buttocks within a "couple days" of the incident with defendant. She stated that she took photographs of the injuries and sent them to the State. When shown State's exhibits 2-5, she recognized them as the photos she took of herself and identified them as being both unaltered and a fair and accurate depiction of the injuries she sustained. She also testified that she did not have the injuries before the September 14 incident with defendant and noticed them when she got out of the shower in the days that followed the incident.

¶ 31      In admitting the photos into evidence over defendant's objection, the trial court stated that the lack of specificity as to what day Dorsey took the photos of her injuries would go to the weight the of the evidence as opposed to its admissibility. We agree with the court's decision. Although she could not recall the exact day she took the photos, Dorsey did recall that it was a "couple days" after the incident with defendant. Dorsey's testimony clearly demonstrates that she had personal knowledge of her injuries, took the photos herself, and that the photos were unaltered images of those injuries after the incident with defendant. Thus, her testimony was sufficient for the photos to be admitted. Her lack of specificity as to the date of when the photos

were taken could lead the jury to put less weight on the evidence but did not negate the foundation laid to admit the photos into evidence. Defense counsel highlighted this fact in cross-examination, when Dorsey admitted that she was not sure how she received the bruises because she had been drinking that evening, but believed it was from "tussling" with defendant. Thus, the court did not err in admitting the photos of Dorsey's injuries into evidence.

¶ 32    Defendant also argues that the trial court erred by admitting the petition for order of protection into evidence, averring that the State improperly led Dorsey in its questioning, failed to lay proper foundation to introduce the petition into evidence as it was hearsay with no applicable exception, and that the court improperly published the petition to the jury. In response, the State maintains that the court did not err in admitting the petition into evidence as it was a prior inconsistent statement and admissible as substantive evidence. We agree with the State.

¶ 33    Section 115-10.1 of the Code allows for the use of a witness's prior inconsistent statements as substantive evidence when the statement is inconsistent with her testimony at trial, the witness is subject to cross-examination concerning the statements, the statements describe an event of which the witness had personal knowledge, and the statements have been written or signed by the witness. 725 ILCS 5/115-10.1 (West 2018); *People v. Benford*, 349 Ill. App. 3d 721, 730 (2004). A witness's prior testimony need not "directly contradict testimony given at trial to be considered inconsistent within the meaning of that term set out in [the Code]." *People v. Flores*, 128 Ill. 2d 66, 87 (1989). Inconsistencies in a witness's trial testimony may be found in her evasive answers, silence, or changes of position. *Id.* One of the policies underlying section 115-10.1 of the Code is to protect parties from turncoat witnesses who back away from a former statement made under circumstances indicating that it was likely to be true. *People v. Martin*,

408 Ill. App. 3d 891, 95 (2011). "The determination of whether a witness' prior testimony is inconsistent with [her] present testimony is left to the sound discretion of the trial court." *Flores*, 128 Ill. 2d at 87-88.

¶ 34    Here, the record establishes that Dorsey's trial testimony was inconsistent with her prior statements in the petition of order of protection. At trial, Dorsey did not recall any specifics about the incident, why they were arguing, and what happened between her and defendant. Her testimony was evasive and equivocal; when asked about the incident, Dorsey merely identified that she "[thought] it got physical." In contrast, in the petition, Dorsey averred that defendant threw water at her, pushed her, and punched her in the face. Dorsey also averred in the petition that defendant stated he wanted to smash her head in. Dorsey's trial testimony appears notably evasive when taken in conjunction with her additional testimony that she was "not happy" about appearing in court, did not want to testify against defendant, and had a pending criminal contempt case for not appearing at the first trial date. In his reply brief, defendant asserts that Dorsey's trial testimony was not inconsistent with her statements in the petition because she was "merely unable to recall some of the details" of the incident between her and defendant at trial because she had been drinking. However, where a witness claims at trial to be unable to recollect a matter, a former affirmation of the matter should be admitted as a contradiction. *Flores*, 128 Ill. 2d at 87. Thus, Dorsey's evasive answers were sufficient to be considered inconsistent with her previous statements under section 115-10.1. See *Martin*, 408 Ill. App. 3d at 895 (holding that a statement written by an evasive victim was admissible under section 115-10.1).

¶ 35    The State also laid an adequate, although imperfect, foundation for the petition's entry into evidence. "Laying the foundation for the admission of a prior inconsistent statement as substantive evidence under section 115-10.1 of the Code is essentially the same as laying the

foundation to impeach a witness with [her] prior inconsistent statement." *People v. Edwards*, 309 Ill. App. 3d 447, 457 (1999) (Steigmann J., specially concurring). Such foundation includes asking the witness whether she made the inconsistent statement, directing the witness to the time, place, and circumstances of the statement and its substance. *Id.* at 457-58. The witness must have an opportunity to explain the inconsistency before the introduction of extrinsic evidence of the statement to prevent unfair surprise and to give the witness an opportunity to explain any inconsistency. *Id.* at 458.

¶ 36      Dorsey testified that on September 15, 2017, the day after the incident with defendant, she went to the courthouse "early in the morning" to file a petition for order of protection, at the encouragement of Lipke. She had help drafting the petition from unknown courthouse employees but read the petition afterwards and verified its veracity by signing it under penalty of perjury pursuant to section 1-109 of the Code of Civil Procedure. 735 ILCS 5/1-109 (West 2018). Dorsey was given an opportunity to explain the inconsistencies, and she reiterated that she could not recall the events of the incident. She was then confronted with the statements contained in the petition and stated that on September 15, she did recall each of the events contained in the petition. Although the State did not elicit the clearest testimony from Dorsey, we conclude that the testimony the State elicited laid the necessary foundation to admit the petition into evidence. With the foregoing established, and the deference we must give to the trial court's findings, we cannot say that the trial court abused its discretion in admitting the petition for an order of protection.

¶ 37      Defendant argues that it was error for the trial court to publish the entire petition of order of protection to the jury when Dorsey was impeached on only three inconsistent statements in the document. To be sure, the petition does contain some extraneous information that was otherwise

entered into evidence through the testimony of Dorsey, Katilyn, and Lipke. Although prior consistent statements are generally inadmissible, a trial court does not need to make a quantitative or mathematical analysis of whether a witness's entire statement is inconsistent in admitting it into evidence. *People v. Lee*, 335 Ill. App. 3d 659, 669 (2002) (citing *People v. Morales*, 281 Ill. App. 3d 695, 701 (1996)). Here, the other statements merely provide context to the incident and are not unduly prejudicial. Thus, the court did not err in publishing the petition to the jury.

¶ 38    Fifth, defendant argues that the State committed prosecutorial misconduct when it asked Lipke a question in direct contradiction to an earlier court order. Defendant's argument again fails. In order for prosecutorial misconduct to warrant reversal, the State's actions must be particularly egregious and constitute a material factor in the defendant's conviction. *People v. Reyna*, 289 Ill. App. 3d 835, 39 (1997). "Prosecutorial misconduct may occur when the State ignores a trial court's ruling and continues the line of questioning ruled on by the court." *Id.* Here, defendant argues that the State committed prosecutorial misconduct when it asked Lipke if Dorsey indicated who had hit her in the face on September 14, 2017, because the court ruled earlier that the question was irrelevant.

¶ 39    A simple reading of the record belies defendant's argument. The trial court did not forbid the State from asking who caused the injury to Dorsey's face on September 14—the essence of the charges against defendant—but rather who injured her finger in an earlier incident:

> "THE COURT: [Defense counsel] asked a very open-ended question to this officer. It was not specific in relation to dates that anything else occurred and [counsel] did open the door. I do not want to get into anything else that happened except for I think

it is fair to allow the State to ask the officer if the victim told him about an injury to some other part of her body ***.

Otherwise, the Jury is left with the possible belief that this victim told [the officer] that her arm was injured or her buttocks was injured on a prior occasion and it totally defeats the position of the State that [those injuries] occurred on this date. And so without them being able to clarify that she informed [the officer] of an injury that was something different *** you have opened the door to something that they need to have an opportunity to redirect him

***

So [State], what do you intend to ask in relation to the injury issue?

MS. SCHMIDT [ASSISTANT STATE'S ATTORNEY]: We intend to ask the following three questions, Judge: On September 14, 2017, did Ms. Dorsey tell you about an injury to any other part of her body than her face or lip?

What part of her body did she indicate the injury was to?

And did she indicate who caused that injury?

THE COURT: Okay, I don't know why it is relevant who she says caused the injury, and so, I am going to bar you from asking that question.

You can ask her if – you can ask the officer if she told him about any other injury, and if it occurred, what part of her body it occurred to. But I am not going to allow you to ask who caused the injury."

Thus, when the State subsequently asked Lipke on redirect if Dorsey indicated who struck her in the face on September 14, 2017, it was not in contradiction to the court's order to not ask who

caused the injury to her finger on an earlier date. We cannot say that the prosecutor engaged in misconduct in asking Lipke who Dorsey indicated struck her in the face.

¶ 40    Finally, defendant argues that the trial court erred in denying his first motion in *limine* to introduce evidence of previous instances of domestic violence between him and Dorsey and in not allowing defense counsel to introduce statements made by defendant at the time of his arrest. The record before us lacks the hearing of the first motion in *limine* and thus necessarily lacks the trial court's reasoning for denying the motion. Similarly, the only reference to introducing any of defendant's statements occurs in defendant's posttrial motion and the record is devoid of the trial court's reasoning to deny that motion as well. These omissions in the record are in contravention of Illinois Supreme Court Rule 323(a) (eff. July1, 2017) ("The report of proceedings shall include all the evidence pertinent to the issues on appeal."). We note that the appellant bears the burden of providing a reviewing court with a complete record sufficient to support his claims of error, and any doubts that arise from the incompleteness of the record will be resolved against the appellant. *People v. Lopez*, 229 Ill. 2d 322, 344 (2008) (citing *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984)). Here, because we do not have the ability to assess the trial court's reasoning for denying the motion and the request, we cannot review them, and presume that the court did not err in so doing. Given the foregoing, we cannot say that the court committed reversible errors in making its procedural and evidentiary rulings.

¶ 41    Defendant's next contention is that the State failed to prove him guilty of the second count of domestic battery (insulting or provoking contact; 720 ILCS 5/12-3.2(a)(2)), beyond a reasonable doubt. Where a defendant challenges the sufficiency of the evidence supporting his conviction, the reviewing court's inquiry is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt. *People v. Collins*, 214 Ill. 2d 206, 217 (2005). It is the province of the jury, as the trier of fact, to assess the credibility of the witnesses and the weight to be given to their testimony, resolve conflicts or inconsistencies in the evidence, and to draw reasonable inferences from the evidence. *People v. Olaska*, 2017 IL App (2d) 150567, ¶ 142. A reviewing court will not substitute its judgment for that of the trier of fact in those matters. *Id.* A criminal conviction will be reversed only where the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *Fultz*, 2012 IL App (2d) 101101, ¶ 42.

¶ 42 To prove a defendant guilty of domestic battery under section 12-3.2(a)(2) of the Criminal Code, the State must prove that defendant: (1) intentionally or knowingly, (2) without legal justification, (3) made physical contact of an insulting or provoking nature, (4) with a household member. *People v. Taher*, 329 Ill. App. 3d 1007, 1018 (2002). Defendant maintains that the State did not meet its burden in proving the first three elements.

¶ 43 With respect to the first element, defendant argues that the State did not present any evidence that he intended to make physical contact with Dorsey and that Dorsey testified that she attacked him first. The record establishes that Dorsey stated she thought she "went after" defendant first but was not sure; she stated several times that the two "tussled" or "got physical" with each other. Dorsey further testified that the day after the incident she wrote in the petition that defendant stated he was going to smash her head in. Lipke testified that at the scene of the incident, Dorsey seemed nervous and stated defendant hit her in the face, which caused a laceration to her lip and a swollen eye. Although it is true, as defendant argues, that the State did not produce any direct evidence of defendant's mindset at the time of the incident, his statement about smashing her head in paired with the evidence that he struck her in the face, is circumstantial as to his intent. "A mental state is seldom proved by direct evidence and must generally be inferred from the

surrounding circumstances." *People v. Lissade*, 403 Ill. App. 3d 609, 613 (2010). Taken together, we cannot say that no rational trier of fact could determine that defendant did not act knowingly when he struck Dorsey in the face.

¶ 44    With respect to the second element, defendant argues that he acted in self-defense, as evidenced by the photos of the injuries he sustained during the incident, and the State did not disprove that beyond a reasonable doubt. Self-defense is an affirmative defense to a domestic battery charge (*People v. Grayson*, 321 Ill. App. 3d 397, 402 (2001)), and once a defendant raises it, the State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. *In re T.W.*, 381 Ill. App 3d 603, 612 (2008). The elements of self-defense are (1) that unlawful force was threatened against a person; (2) that the person threatened was not the aggressor; (3) that the danger of harm was imminent; (4) that the use of force was necessary; (5) that the person threatened actually and subjectively believed a danger existed that required the use of force applied; and (6) the beliefs of the person threatened were objectively reasonable. *Id.* If the State negates any of these elements, the defendant's self-defense claim fails. *People v. Lee*, 213 Ill 2d 218, 225 (2004).

¶ 45    Here, defendant presented photographic evidence of the injuries he sustained the night of the incident: scratches on his neck and a red mark on his torso. Defendant relies on these photos as well as Dorsey's testimony that she may have went after defendant first to establish his self-defense affirmative defense. However, Dorsey admitted she was not sure if she attacked defendant first and mentioned throughout her testimony that the two had a huge argument, or tussled, or got physical with each other. The petition indicated that defendant punched Dorsey in the face, which was corroborated by the testimony of Lipke, and pushed her down which caused bruises on her body, which was corroborated by the State's photographic evidence. The petition also indicated

that defendant threatened to smash her head in. Viewing the evidence in the light most favorable to the State, as we must, we conclude that a rational trier of fact could have found beyond a reasonable doubt that defendant did not act in self-defense, and may have mutually entered into the incident. See *People v. White*, 293 Ill. App. 3d 335, 338 (1997) (the defense of self-defense is not available when both parties fought willingly upon equal terms).

¶ 46    With respect to the third element, defendant argues that there was insufficient evidence to establish that he made contact of an insulting or provoking nature because Dorsey did not call the police herself and there was inconsistent evidence of whether defendant threw water on Dorsey, as the petition stated he did. Although it is true that Dorsey did not call the police, there is no need for a victim to contact the authorities to demonstrate that she was insulted or provoked. See *People v. Wrencher*, 2011 IL App (4th) 080619, ¶ 55 ("[t]he victim does not have to testify he or she was provoked; the trier of fact can make that inference from the victim's reaction at the time"). Defendant's actions, in pushing her and punching her in the face, prompted Dorsey to text her daughter because she was upset and freaked out at the huge fight she just had with defendant. Contrary to defendant's arguments both in his brief and at oral argument, a victim of domestic battery has no additional requirement to contact the police immediately or otherwise "mitigate" her damages to show that she was provoked.

¶ 47    Defendant further points out that contrary to Dorsey's prior statements in the written petition, neither she nor Lipke identified that Defendant had thrown water at Dorsey at trial. Defendant argues that this omission, in part, demonstrates that Dorsey was so incredible, that no reasonable juror could have found her story to be accurate. We disagree. Contrary to defendant's argument, it is not uncommon that victims of domestic battery "cannot recall" certain events at trial. See e.g. *Martin*, 408 Ill. App. 3d at 892-93 (at trial girlfriend could not recall pulling over car

and telling police that her defendant-boyfriend had just struck her while driving); *People v. Grayson*, 321 Ill. App. 3d at 400-01 (at trial siblings stated could not remember defendant-brother breaking victim-brother's nose after playing cards). Here, a jury found the State's evidence sufficiently credible despite defense counsel's thorough cross-examination. Because the jury, as the factfinder, is in a better position to assess the witnesses' credibility and resolve the inconsistencies in the evidence, we cannot say that the State failed to prove that defendant made contact with Dorsey of an insulting or provoking nature.

¶ 48    Defendant also avers that the jury's verdicts, which found him not guilty of bodily harm but guilty of insulting or provoking contact, were legally and logically inconsistent, and therefore the State failed to meet its burden of proving each element beyond a reasonable doubt. Verdicts are legally inconsistent when (1) both offenses a defendant is accused of arise out of the same set of facts and (2) the jury concludes that the same essential element of each crime a defendant is accused of both exists and does not exist. *People v. Murray*, 34 Ill. App. 3d 521, 531 (1976). Because legal inconsistencies in verdicts are necessarily contradictory as to the same essential element, they must be reversed, because the conviction, as a matter of law, cannot be deemed to have been based upon proof beyond a reasonable doubt. *Id.* at 532. Verdicts are logically inconsistent when they can only be construed as both an acceptance and rejection of the same theory of the case. *Id.* Logical inconsistencies in verdicts, absent a legal inconsistency, do not require reversal. *People v. Jones*, 174 Ill. App. 3d 737, 743 (1988). Reviewing courts will nevertheless consider whether legally consistent verdicts are logically inconsistent and, if so, whether the logical inconsistency raises a reasonable doubt of the defendant's guilt. *Jones*, 174 Ill. App. 3d at 744.

¶ 49    Here, defendant argues that the verdicts were legally inconsistent because the State only elicited testimony about, and presented evidence of, the bodily harm charge. We reject defendant's argument. The State did elicit testimony from Dorsey that she was "freaked out" and "upset" at the "huge fight" between her and defendant, and that the fight, in which defendant punched her in the face and pushed her to the ground, caused her to text her daughter. Because the charges had a different essential element, bodily harm versus contact of an insulting or provoking nature, and the State presented evidence of each of the elements, we cannot say that the verdicts are legally inconsistent.

¶ 50    We also reject defendant's argument that the verdicts were logically inconsistent because State put forth only one theory of the case. Defendant avers that the State only submitted one theory of the case to the jury: that Dorsey suffered from bruises and therefore defendant caused bodily harm. While the State did put forth this theory, it also advanced the theory that because of defendant's actions, Dorsey was afraid, texted her daughter, and filed a petition for an order of protection. In finding defendant not guilty of bodily harm, the jury seemingly rejected the State's theory that defendant caused the injuries that Dorsey suffered as indicated in the photographic evidence; in finding defendant guilty of insulting or provoking contact, the jury seemingly accepted the State's theory that Dorsey was scared and provoked by defendant's actions (punching her in the face, pushing her down, threatening to smash her head in) during the incident. Because the State advanced different theories of the case, and the jury determined one proven beyond a reasonable doubt and one not, the verdicts cannot be logically inconsistent.

¶ 51    Finally, defendant contends, in a rather conclusory manner, that the insulting or provoking provision of the statute he was found guilty of is vague and overbroad and thus unconstitutional as applied to him. Defendant here complains that section 12-3.29(a)(2)  of the Criminal Code

(insulting or provoking contact) is vague and overbroad because prosecutors have "wide and rampant discretion in their enforcement of the charge" and "the conduct that [defendant] is alleged to have committed *** is not clear." We disagree.

¶ 52     Whether a statute is unconstitutional is a matter of law, and thus the standard of review is *de novo*. *People v. Taher*, 329 Ill. App. 3d 1007, 1012 (2002). "Statutes carry a strong presumption of constitutionality, and the party challenging the constitutionality of a statute bears the burden of rebutting this presumption." *People v. Maness*, 191 Ill. 2d 478, 483 (2000).

¶ 53     In an analogous context to the case-at-hand, the appellate court concluded that the phrase "contact of an insulting or provoking nature" is not unconstitutionally vague or overboard. In *Taher*, the defendant was convicted for domestic battery for making contact of an insulting or provoking nature with his wife, where she alleged he grabbed her, threw her to the ground, and stuck his foot in her mouth. 329 Ill. App. 3d at 1011. The defendant testified that he had only ticked his wife's stomach, which made her angry. *Id.* The court held that "a person of ordinary intelligence would undoubtedly conclude" that the act of throwing someone to the ground and forcing his foot into that person's mouth would be insulting or provoking contact. *Id.* at 1016. The court also determined that the phrase "contact of an insulting or provoking nature" would not lead to arbitrary enforcement because "the words 'insulting' and 'provoking' are commonly used words that are neither vague nor difficult for the average person to define." *Id.* Additionally, because the conduct prohibited by the statute is not protected by the first amendment, which is a requirement for a law to be unconstitutional under the overbreadth doctrine, the court held section 12-3.2(a)(2) of the Criminal Code to be not unconstitutionally vague or overbroad. *Id.* at 1017.

¶ 54     Here, the testimony presented to the jury demonstrated that defendant and Dorsey were live-in boyfriend and girlfriend and got into a "huge fight" during dinner. During the fight, things

got physical between the two, and Dorsey indicated that defendant punched her in the face. Dorsey was "freaked out" and "upset," so she texted her daughter, who called the police and came to check on her mother. Like the *Taher* court, we conclude that an average person or ordinary intelligence would find that being punched in the face during a heated argument would be insulting or provoking. See *People v. DeRosario*, 397 Ill. App. 3d 332, 334 (2009) (contact can be insulting or provoking depending on the context of the incident). We thus conclude that the phrase "contact of an insulting or provoking nature" not vague or overbroad as applied to defendant.

¶ 55                                    III. CONCLUSION

¶ 56    For the reasons stated, we affirm defendant's domestic battery conviction.

¶ 57    Affirmed.